UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRA POTOVSKY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>LINCOLN BENEFIT LIFE,<br><br>    Defendant. | Case No. 23-cv-02235-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 20 |

Defendant Lincoln Benefit Life ("Lincoln") moves to dismiss a First Amended Complaint ("FAC") brought by Ira and Patricia Potovsky ("the plaintiffs"), who allege that Lincoln breached their insurance contract and the implied covenant of good faith and fair dealing, and committed financial elder abuse when it refused to cover Patricia Potovsky's claim for long-term care benefits. The breach of contract claim does not adequately allege performance (or excuse for nonperformance) by the plaintiffs, or that they incurred damages as a result of Lincoln's purported breach. The good faith claim does not plausibly allege that the plaintiffs were entitled to benefits or that Lincoln acted in bad faith. And the elder abuse claim depends on the allegation that the plaintiffs were incorrectly denied insurance benefits, which on its own cannot support the claim. The motion is GRANTED with leave to amend. While within the FAC there are a bundle of allegations that might constitute plausible causes of action with some additional facts, at the moment they are not pleaded in a way that would allow this case to proceed.

## BACKGROUND

In 2002, the Potovskys purchased from Lincoln a Comprehensive Long-Term Care Insurance Policy ("the Policy"), which they since renewed annually. FAC [Dkt. No. 17] ¶¶ 6, 10. Both Patricia Potovsky and Ira Potovsky are named insureds under the Policy. *Id.* ¶ 7.

The Policy includes a home health care provision, which provides that Lincoln would pay for "charges for treatment and care" if certain requirements were met. *Id.* ¶ 15. As alleged in the FAC, the provision states:

> Conditions for Benefit Payment
>
> We will pay benefits if:
>
> 1. You are a Chronically ill Individual; and
>
> 2. You are receiving Home Care pursuant to a Plan of Care prescribed by a Licensed Health Practitioner; and
>
> 3. A Plan of Care as outlined in the policy is submitted to us for review; and
>
> 4. You have satisfied the Elimination Period shown in the Policy Schedule; and
>
> 5. You have not exceeded the Total Maximum Amount Payable as shown in the Policy Schedule.

*Id.* The policy defines a "Chronically Ill Individual" as

> any individual who has been certified within the previous 12 months by a Licensed Health Care Practitioner as:
>
> a. Being unable to perform, without substantial assistance from another individual, at least two Activities of Daily Living for a period of at least 90 days due to loss of Functional Capacity; or
>
> b. Requiring substantial supervision to protect such individual from threats to health and safety due to severe Cognitive Impairment.

*See* Mot. to Dismiss ("MTD") [Dkt. No. 20] Kojima Decl., Ex. 1 ("Policy") at 6.[1]

In or around September 2022, Lincoln "timely received notice of Mrs. Potovsky's need for

---

[1] Lincoln filed a copy of the Potovskys' Policy with its motion to dismiss. *See* MTD, Kojima Decl., Ex. 1. In addition, he plaintiffs attached three exhibits to the FAC: (1) an email from the Potovskys' son to Lincoln; (2) Lincoln's April 5, 2023, denial of the Potovskys' claim; and (3) the April 28, 2023, denial of their appeal. *See* FAC, Exs. 1-3. Although a court's consideration of a motion to dismiss is generally limited to the pleadings, the court "may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A document is incorporated into a complaint by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* I will consider the above-referenced documents because: (1) the plaintiffs' exhibits are attached to the FAC; and (2) the FAC refers extensively to the Policy, which also forms the basis of the plaintiffs' claims.

2

home health care" and assigned a claim number. FAC ¶ 16. Over the next seven months, Ira Potovsky cared for his wife, who experiences "physical and mental deficits" including dementia. *See id*. ¶¶ 17, 20. The Potovskys' children and grandchildren also assisted with her care. *Id*. ¶ 17.

The FAC alleges that despite providing "all the information requested by Lincoln, and all information necessary for Lincoln to acknowledge that [the] Potovskys required the care promised under the terms of the Policy," Lincoln denied Patricia Potovsky's claim. *Id*. ¶¶ 18-20. In its denial letter, Lincoln stated that "[w]hile the medical documentation on file does support Mrs. Potovsky has a cognitive impairment, there is nothing in the file to support the cognitive impairment is severe and requires substantial supervision." *Id*. ¶ 20 (citing Ex. 2). The letter did not provide any other reasons for denying the claim. *Id*.

The Potovskys appealed the denial and provided additional evidence allegedly supporting Patricia Potovsky's need for care. *Id*. ¶ 21. Lincoln denied the appeal on April 28, 2023, "again determining only that plaintiff did not require substantial supervision." *Id*. (citing Ex. 3). The appeal denial letter stated that:

> The review of the additional information you provided does not change our decision to deny benefits. The Policy requires the insured have a severe cognitive impairment that requires substantial supervision. The medical records and cognitive testing we have received and reviewed report that Mrs. Potovsky has a mild cognitive impairment. Therefore, she does not have a severe cognitive impairment that requires substantial supervision.

*Id*. The FAC alleges that Lincoln violated the terms of the Policy by failing to "agree that it has an obligation to pay benefits owed under the Policy." *Id*. ¶¶ 24-25.

The Potovskys sued Lincoln in May 2023 and, upon a motion to dismiss from Lincoln, filed the FAC. *See* Dkt. Nos. 1, 15, 17. They assert three claims: breach of contract, breach of the implied covenant of good faith and fair dealing, and financial elder abuse. Dkt. No. 17. The defendants again moved to dismiss. Dkt. No. 20.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl*.

3

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts her allegations as true and draws all reasonable inferences in her favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

**DISCUSSION**

**I.    BREACH OF CONTRACT**

To state a claim for breach of contract, a plaintiff must plausibly allege: (1) the existence of a contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Lincoln contends that the breach of contract claim "collapses at the outset" because the plaintiffs fail to allege that they performed or incurred damages, "namely, that they have incurred 'actual daily' expenses for Mrs. Potovsky's care for which they seek reimbursement." MTD at 8:23-27. According to Lincoln, "[t]he Policy is a reimbursement policy: no benefits are owed unless the insured actually incurs the prerequisite expenses." *Id*. at

4

8:27-9:1.

The plaintiffs argue that the claim's elements are plausibly alleged by way of: (1) the existence of the contract; (2) "[p]erformance under the contract in that Patricia has alleged that she is 'chronically ill' as defined by the Policy"; (3) "[b]reach of the contract by Lincoln's wrongful denial of benefits based on its erroneous determination that Patricia is not 'chronically ill'"; and (4) "[d]amages in the form of home health care services that Mrs. Potovsky would have received had Lincoln acknowledged her entitlement to be reimbursed for supervised care." Oppo. [Dkt. No. 23] 8:9-17 (citing FAC ¶¶ 2-37). The plaintiffs then argue that Lincoln "waived its right to argue that 'actual expenses' are required" before filing suit because it denied the claim because Patricia Potovsky was "not 'chronically ill'" and provided no other basis for denial. *Id*. at 10:11-14:19. They also contend, for the first time in their opposition, that Lincoln committed an anticipatory breach of the insurance contract. *See id*. at 14:20-16:3.

There are a few issues with the breach of contract claim. First, I am not satisfied with the plaintiffs' allegation that they performed under the contract simply by alleging that Patricia Potovsky was chronically ill as defined by the Policy. *See id*. at 8:9-17. As pleaded, Lincoln agreed to pay benefits if a number of criteria were satisfied, including that the claimant is a "Chronically ill Individual," but also that she is "receiving Home Care pursuant to a Plan of Care . . ." and has "satisfied the Elimination Period shown in the Policy Schedule." FAC ¶ 15. In other words, according to the allegations in the FAC, it is not enough that Patricia Potovsky is a "chronically ill individual"; it appears that additional criteria must be met for Lincoln to pay benefits. *See id*.

Although the FAC alleges that Patricia Potovsky "met the criteria to receive benefits under the terms of her Policy," more details are needed to plausibly support this, as many of the allegations within the FAC undercut a showing of performance by the plaintiffs. *See id*. ¶ 33. For example, the FAC alleges that Ira Potovsky is his wife's primary caregiver, and that their children and grandchildren provide some assistance. *See id*. ¶ 17. It further alleges that "Mr. Potovsky has agreed to pay his children and grandchildren for the care they have provided upon receipt of benefits from Lincoln." *Id*. But the Policy expressly "does not cover any confinement, treatment

5

or services . . . provided by a member of [the insured's] immediate family." *See* Policy at 9. And to satisfy the 90-day elimination period, a claimant must either be confined in a nursing or residential care facility, be receiving home care, or any combination of those before benefits are payable. *See id*. at 3, 6. Because at least some of Patricia Potovsky's care was provided by her immediate family, it would appear that, as alleged, she may not have satisfied these requirements. *See* FAC ¶ 15. This also weighs against a showing of performance.[2]

There is another issue with the breach of contract claim: damages. The FAC alleges that Ira Potovsky cared for his wife and "agreed to pay his children and grandchildren for the care they have provided upon receipt of benefits from Lincoln." FAC ¶ 17. It also alleges that the plaintiffs suffered "incidental damages and out-of-pocket expenses." *Id*. ¶ 43. But the FAC does not articulate what expenses or other damages the plaintiffs incurred as a result of Lincoln's purported breach. Indeed, the plaintiffs describe their damages as the "home health care services that Mrs. Potovsky *would have received* had Lincoln acknowledged her entitlement to be reimbursed for supervised care." *See* Oppo. at 8:15-17 (emphasis added). But services that one would have received are not the same as expenses that one actually incurred, and the plaintiffs have not plausibly alleged the latter. I do not mean to diminish the care that Ira Potovsky provided for his wife, or that their children and grandchildren offered. *See* FAC ¶ 17. But the FAC must clearly set forth some form of damages for the breach of contract claim to proceed.[3]

The plaintiffs next argue that Lincoln "waived its right to argue that 'actual expenses' are required before filing a lawsuit to challenge its wrongful and unreasonable denial of benefits," because of its "failure to address the issue at any time during the claims process." *See* Oppo. at

---

[2] Nor do the plaintiffs allege that they were excused from performance. *See* FAC ¶ 37 ("At all relevant times, plaintiffs have performed all obligations under the Policy on their part to be performed.").

[3] This is particularly true in light of the Policy language, which states that services for care "are payable *at actual expenses incurred*" up to $120 per day. *See* Policy at 3 (emphasis added). This supports Lincoln's argument that in order to have performed under the contract, the plaintiffs had to incur actual expenses. *See* MTD at 8:23-9:6. The FAC does not expressly allege that the plaintiffs did so; instead, the plaintiffs' theory is that Lincoln breached the contract by preemptively saying it would not pay benefits. *See, e.g.*, FAC ¶ 22.

6

12:6-15. Any determination of waiver is inherently fact-based and would be premature at this point. Waiver is "the intentional relinquishment of a known right after knowledge of the facts." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 31 (1995) (citations omitted). "The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right." *Id.* "Whether there has been a waiver is usually regarded as a question of fact to be determined by the jury, or by the trial court if there is no jury." *Posner v. Grunwald-Marx, Inc.*, 56 Cal. 2d 169, 189 (1961) (citation omitted). Where there are disputes or conflicting evidence regarding a party's intent or the parties' understanding, waiver is generally "not resolvable as a matter of law." *See Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 679 (2000).

Such a conflict is apparent from the papers. The FAC alleges that Lincoln denied the plaintiffs' claim (outright and on appeal) after determining that Patricia Potovsky's cognitive impairment was not severe, and did not reference other reasons for denying the claim. *See* FAC ¶¶ 20-21. The denial letters attached to the FAC support this assertion. *See id.*, Exs. 2-3. However, as Lincoln notes, the initial letter also states the following:

> By stating these reasons why the claim is not covered by the policy, Lincoln Benefit Life does not waive any other rights or defenses which it may have. This letter is not intended to be a full disclosure of all policy coverages, conditions, and exclusions.

*See* Reply [Dkt. No. 24] 8:12-21 (citing FAC, Ex. 2). Whether Lincoln waived any other denial bases—via this provision or otherwise—is a fact-based question that cannot be answered at this early stage of the case. The parties may address it when the case progresses.

The breach of contract claim ultimately may be better suited as an anticipatory breach claim, which the plaintiffs' opposition seems to suggest. *See* Oppo. at 14:20-16:3. But this theory of liability is not pleaded in the FAC and instead raised for the first time in the opposition. *See generally* FAC; *see also* Oppo. at 14:20-16:3. If the plaintiffs want to allege an anticipatory breach, they should do so in an amended complaint. *See Barbera v. WMC Mortg. Corp.*, No. C-04-3738-SBA, 2006 WL 167632, at *2 n.4 (N.D. Cal. Jan. 19, 2006) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss."). I will assess the

7

merits of any anticipatory breach claim if and when it is pleaded and challenged in subsequent motion work.

For these reasons, the breach of contract claim is DISMISSED with leave to amend.

## II.     BREACH OF GOOD FAITH AND FAIR DEALING

To state a claim for breach of good faith and fair dealing in the insurance context, a plaintiff must plausibly allege: "(1) benefits due under a policy were improperly withheld, and (2) the withholding was unreasonable or without proper cause." *Henley v. Safeco Ins. Co. of Am.*, No. 21-CV-04243-RS, 2022 WL 2528548, at *3 (N.D. Cal. July 7, 2022) (citing *CalFarm Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 286 (2005)). "The test for determining whether an insurer is liable for breach of the implied covenant turns on whether the insurer's alleged refusal or delay was unreasonable." *Nationwide Mut. Ins. Co. v. Ryan*, 36 F. Supp. 3d 930, 941 (N.D. Cal. 2014). "[T]he withholding of benefits due under the policy is not unreasonable if there was a genuine dispute between the insurer and the insured as to coverage or the amount of payment due." *Rappaport-Scott v. Interinsurance Exch. of the Auto. Club*, 146 Cal. App. 4th 831, 837 (2007).

The plaintiffs allege that Lincoln breached its duty of good faith and fair dealing by:

(1) "Unreasonably reducing and withholding approval of benefits from plaintiffs in bad faith at a time when defendant knew Mrs. Potovsky was entitled to said benefits under the Policy";

(2) "Unreasonably and in bad faith failing to provide a prompt and reasonable explanation of the basis relied on under the terms of the Policy, in relation to the applicable facts and Policy provisions, for the failure to pay valid claims under the terms of plaintiffs' coverage";

(3) "Intentionally and unreasonably applying pertinent Policy provisions to limit defendant's financial exposure and contractual obligations and to maximum profits"; and

(4) "Unreasonably compelling plaintiffs to institute litigation to recover the benefits due under the Policy to further discourage plaintiffs from pursuing her full Policy benefits."

FAC ¶ 40.

This claim falls short for two reasons. First, although a claim for breach of good faith and fair dealing does not always require an underlying breach of contract (contrary to Lincoln's

8

assertion), here it does—at least to the extent that the claim is based on Lincoln's "withholding approval of benefits." *See* MTD at 11:11-23; *see also Parducci v. Overland Sols., Inc.*, No. 18-CV-07162-WHO, 2019 WL 6311384, at *8 (N.D. Cal. Nov. 25, 2019) (explaining that depending on the type of bad faith claim asserted, a plaintiff "is not required to bring a breach of contract claim along with his breach of implied covenant claim"); *King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 941 (N.D. Cal 2015) (similar). That is because "a first party bad faith claim"—such as the plaintiffs' claim made to Lincoln—"requires an insured to show that he was owed benefits under the contract." *See King*, 129 F. Supp. 3d at 941 (citing cases). As I have explained, the plaintiffs have not yet shown that they were entitled to benefits under the Policy.

Second, the plaintiffs have not plausibly alleged that Lincoln's denial of their claim—or any delay in deciding it—was unreasonable. The FAC alleges that Lincoln received Patricia Potovsky's claim in September 2022 and did not issue a denial letter until April 5, 2023. FAC ¶¶ 16-20. During that time, however, it appears that Lincoln requested additional information from the Potovskys to assess the claim. The FAC alleges that "[d]uring the period between September 2022, and April 5, 2023," the plaintiffs, their children, and Patricia Potovsky's treating physicians "provided all the information requested by Lincoln, and all information necessary for Lincoln to acknowledge" the need for care. *Id.* ¶ 18. The plaintiffs' son's email to Lincoln, which is attached to the FAC, indicates that Lincoln requested additional information relevant to the claim. *See* FAC, Ex. 1 ("We have continued to follow up with the Lincoln Benefits team, only to be told that the claim was being held up while waiting for additional information or another report or something else. . . . Since starting the claims process, we have provided an extensive list of forms and medical records."). The first denial letter explains the records that Lincoln reviewed, and the FAC and Exhibit 3 indicate that Lincoln reviewed "additional information" during the plaintiffs' appeal. *See id.* ¶ 21; *see also* Exs. 2, 3.

It is clear that the plaintiffs disagree with Lincoln's conclusion about the severity of Patricia Potovsky's dementia. But they have not adequately alleged how Lincoln's denial of benefits was unreasonable. Instead, it appears based on the allegations in the FAC and the exhibits attached to it, that there was "a genuine dispute between the insurer and the insured as to

9

coverage or the amount of payment due." *See Rappaport-Scott*, 146 Cal. App. 4th at 837.[4]

The FAC also does not clearly allege how Lincoln failed to "provide a prompt and reasonable explanation of the basis relied on under the terms of the Policy" or "[i]ntentionally and unreasonably appl[ied] pertinent Policy provisions to limit defendant's financial exposure and contractual obligations and to maximize profits." *See* FAC ¶ 40. And because the plaintiffs have not plausibly alleged how the denial of their claim was unreasonable, they have not shown how Lincoln unreasonably compelled them to bring this suit to recover those benefits. *See id.*

The FAC makes only conclusory allegations that Lincoln acted unreasonably in handling or denying the Potovskys' claim, and the allegations within the complaint and accompanying exhibits undercut that assertion. The good faith and fair dealing claim is DISMISSED with leave to amend.

### III. ELDER ABUSE

Under California law, financial abuse of an elder—defined as anyone residing in California aged 65 or older—occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder . . . for a wrongful use or with intent to defraud, or both," or assists in doing so. *See* Cal. Welf. & Inst. Code §§ 15610.27, 15160.30(a)(1)-(2). "In the context of a deprivation of property due an elder under an insurance contract, the plaintiff must show more than an incorrect denial of policy benefits." *Henley*, 2022 WL 2528548, at *3 (citation and quotations omitted); *see also Paslay v. State Farm. Gen. Ins. Co.*, 248 Cal. App. 4th 639, 658 (2016) (stating that the statute "imposes a requirement in addition to the mere breach of the contract term relating to the property, as the existence of such a breach ordinarily does not hinge on the state of mind or objective reasonableness of the breaching party's conduct."). The viability of financial elder abuse claims often turns on whether a plaintiff has sufficiently alleged that the defendant acted in bad faith. *See, e.g., Paslay*, 248 Cal. App. 4th at 658-59; *Crawford v.*

---

[4] The plaintiffs bulk up their arguments about the unreasonableness of Lincoln's alleged acts in their opposition, asserting among other things that "[t]he claims process was unreasonably long and abusive," and that the plaintiffs "were not provided with clear instructions, resubmitted information more than once and [were] required to provide unnecessary information all of which unreasonably delayed the process." *See* Oppo. at 10 n.4. New allegations made in an opposition cannot save the claim. *See Barbera*, 2006 WL 167632, at *2 n.4.

*Continental Cas. Ins. Co.*, No. CV-14-00968, 2014 WL 10988334, at *2 (C.D. Cal. July 24, 2014).

The FAC alleges that "[g]iven the nature of the insurance Policy and the insurance coverage at issue," Lincoln "knew, or should have known that the failure to pay benefits owed to plaintiffs was a harmful breach of duty" and "should have been aware of the harm caused to plaintiffs by all of its actions and most importantly by its failure and refusal to pay [Patricia Potovsky's] long term care benefits." FAC ¶ 50; *see also* Oppo. at 19:11-15 (arguing that the Policy is property and "Lincoln's denial deprived plaintiffs of their property."). But the plaintiffs have not alleged something more than an incorrect denial of benefits purportedly owed under the Policy. The FAC does not sufficiently allege that Lincoln acted unreasonably or in bad faith, or otherwise identify additional facts that could support the claim.

The plaintiffs' financial elder abuse claim is DISMISSED with leave to amend.[5]

## CONCLUSION

Lincoln's motion to dismiss is GRANTED with leave to amend. Any amended complaint is due within 20 days of the issuance of this Order.

**IT IS SO ORDERED.**

Dated: August 31, 2023



William H. Orrick
United States District Judge

---

[5] Because I am dismissing the plaintiffs' claims as insufficiently alleged, I need not decide yet whether they can pursue punitive damages. *See* MTD at 11:25-12:8; Oppo. at 17:17-18:4. For the same reasons, I need not address Lincoln's argument that this lawsuit is barred by the "Legal Action Provision" in the Policy. *See* MTD at 14:8-22. The plaintiffs did not specifically address this in their opposition; they should do so in any future complaint or subsequent motion work. *See generally* Oppo.

11