UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRA POTOVSKY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>LINCOLN BENEFIT LIFE,<br><br>    Defendant. | Case No. 23-cv-02235-WHO<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 32 |

Defendant Lincoln Benefit Life ("Lincoln") moves to dismiss the Second Amended Complaint ("SAC") brought by Ira and Patricia Potovsky ("the plaintiffs"), who allege that Lincoln breached their insurance contract and the implied covenant of good faith and fair dealing, anticipatorily breached the contract, and committed financial elder abuse when it refused to cover Patricia Potovsky's claim for long-term care benefits. The fundamental problem with their claims is that the insurance policy in question is a reimbursement policy, and the Potovskys did not incur or submit any covered expenses to be reimbursed. As a result, they cannot adequately allege performance or that they sustained damages stemming from Lincoln's purported breach of contract. Their anticipatory breach claim fails because Lincoln's denial was based on the terms of the contract and it did not expressly and unequivocally refuse to perform an obligation it had under the contract. Their breach of good faith claim fails because there was no breach of contract and the Potovskys do not plausibly allege that Lincoln acted in bad faith when it denied their benefits. And their elder abuse claim fails because it depends upon the allegation that the plaintiffs were incorrectly denied insurance benefits, which is insufficient to support the claim, and because the other claims fail. The motion to dismiss is GRANTED without leave to amend.

**BACKGROUND**

In 2002, the Potovskys purchased from Lincoln a Comprehensive Long-Term Care

Insurance Policy ("the Policy"), which they have renewed annually. SAC [Dkt. No. 30] ¶ 6, 13. Both Patricia Potovsky and her husband, Ira Potovsky, are named insureds under the Policy. *Id.* ¶ 10.

### A. The Policy

The Policy includes a home health care provision, which provides that insureds will be "[e]ligible for [b]enefits for [q]ualified [l]ong [t]erm [c]are [s]ervices" if they meet certain criteria. *Id.* ¶ 20. As alleged in the SAC, the provision states:

Eligibility for Benefit Payment
> You will be Eligible for Benefits for Qualified Long Term Care Services if:
> 1. You are unable to perform, without Substantial Assistance from another individual, at least two Activities of Daily Living for a period of at least 90 days due to a loss of Functional Capacity; or
> 2. You require Substantial Supervision to protect yourself from threats to health and safety due to severe Cognitive Impairment
> "Cognitive Impairment" means the deterioration or loss of your intellectual capacity which requires substantial supervision by another person to protect yourself or others. It is measured by clinical evidence and standardized tests which reliably measure your impairment in:
>> a. short or long term memory;
>> b. orientation as to people, places or time; and
>> c. deductive or abstract reasoning.

In the FAC, plaintiffs referenced the Policy's "Conditions for Benefit Payment," which states:

> We will pay benefits if:
> 1. You are a Chronically ill Individual; and
> 2. You are receiving Home Care pursuant to a Plan of Care prescribed by a Licensed Health Practitioner; and
> 3. A Plan of Care as outlined in the policy is submitted to us for review; and
> 4. You have satisfied the Elimination Period shown in the Policy Schedule; and
> 5. You have not exceeded the Total Maximum Amount Payable as shown in the Policy Schedule.

Defendant's Motion to Dismiss SAC ("Mot.") [Dkt. 32-1], Ex. 1-010.

The Policy defines a "Chronically Ill Individual" as:
> 1. You are unable to perform, without Substantial Assistance from another individual, at least two Activities of Daily Living for a period of at least 90 days due to a loss of Functional Capacity; or
> 2. You require Substantial Supervision to protect yourself from threats to health and safety due to severe Cognitive Impairment.
> "Cognitive Impairment" means the deterioration or loss of your

>intellectual capacity which requires substantial supervision by another person to protect yourself or others. It is measured by clinical evidence and standardized tests which reliably measure your impairment in: a. short or long term memory; b. orientation as to people, places or time; and c. deductive or abstract reasoning.

*Id.* Ex. 4-002.

Lincoln also requires written "Proof of Loss" for benefit payments under the type of policy the Potovskys purchased. The Policy states:

>Proof of Loss
>"C. PROOF OF LOSS – You must give us written proof of loss, in the case of a claim for loss for which this policy provides any periodic payment contingent upon continuing loss, within 90 days after the termination of the period for which we are liable. For any other loss, you must furnish written proof within 90 days after the date of such loss. If it is not reasonably possible to give us this timely proof, we will not reduce or deny your claim if proof is filed as soon as reasonably possible. In any event, proof must be furnished within 12 months from the time proof is otherwise required, unless legal capacity is absent.

Mot. 4:18-24.

### B. Patricia Potovsky's Condition

Patricia Potovsky received a neuropsychological report on February 27, 2020, that concluded she had "Amnestic Mild Cognitive Impairment." *Id.* ¶ 22. On September 23, 2022, she was diagnosed with dementia for the first time by her primary care physician, Dr. Curtis Robinson. *Id.* ¶ 24. On October 27, 2022, she was again diagnosed with dementia by her treating neurologist, Dr. David Perry, who reported that she had "dementia without behavioral disturbances," and was "independent in all Activities of Daily Living." SAC ¶ 24; *see id.* Ex. G. On April 11, 2023, Patricia saw Dr. Perry again, and he once again diagnosed her with "mild dementia." SAC ¶ 47.

### C. The Potovskys' Interactions with Lincoln Regarding Coverage

The Potovskys informed Lincoln of Patricia's need for home health care in September 2022, after she was diagnosed with dementia for the first time. *Id.* ¶ 21, 26. In October 2022, Lincoln's claims administrator advised the Potovskys that Lincoln must approve the caregivers who would provide care for Patricia. *Id.* ¶ 28. That same month, the Potovskys submitted the names of caregivers that they intended to use, along with their licenses and letters of recommendation. *Id.* ¶ 28. These caregivers never provided full-time care for Patricia. *Id.*; *see*

*generally* SAC.

On January 24, 2023, the plaintiffs provided Lincoln with the Independent Caregiver Service Statements it required to evaluate their claim. *Id.* ¶ 34; Ex. C. On February 15, 2023, Lincoln responded that it had "everything needed to send the claim to the supervisor for approval review." *Id.* ¶ 36; Ex. D.

Ira Potovsky did not hire or pay caregivers while he was waiting for Lincoln to determine whether his wife was eligible to receive benefits. *Id.* ¶ 18, 30. During this time, he acted as "de facto caregiver" to his wife. *Id.* ¶ 60.

On April 5, 2023, Lincoln denied benefits. *Id.* ¶ 41. Lincoln stated that "[w]hile the medical documentation on file does support Mrs. Potovsky has a cognitive impairment, there is nothing in the file to support the Cognitive Impairment is severe and requires Substantial Supervision." *Id.* ¶ 41; *see* SAC Ex. G. Lincoln based this conclusion in part on the October 2022 Attending Physician's Statement that it received from her neurologist, Dr. Perry. *See* SAC Ex. G; *see supra* Section (B). Lincoln also noted that "[t]he medical records from [Patricia's] neurologist, from 5/11/21 – 5/17/22, report that [her] memory problems and daily functioning have been relatively stable for some time, and her condition was consistent with mild Cognitive Impairment." *Id.* Finally, it explained that a "medical consultant specializing in Neuropsychology reviewed the medical records in the claim file," and determined that "it is clear some degree of daily supervision is needed . . . [but] [t]he supervision does not rise to the level of Substantial Supervision secondary to severe Cognitive Impairment as per the policy definitions." *Id.* Lincoln closed the claim. *Id.*

The Potovskys appealed the denial on April 14, 2023, after Patricia saw Dr. Perry once again, and he again diagnosed her with "mild dementia." *Id.* ¶ 47. The appeal cited her "deficiencies" that they said posed a safety risk to herself and others. *Id.* ¶ 48. But Lincoln denied the appeal on April 28, 2023, stating that "the Policy requires the insured have a severe Cognitive Impairment that requires Substantial Supervision . . . Mrs. Potovsky has a mild Cognitive Impairment." SAC ¶ 49; *see id.* Ex. H. The appeal denial letter also stated that:

4

> The review of the additional information you provided does not change our decision to deny benefits. The Policy requires the insured have a severe cognitive impairment that requires substantial supervision. The medical records and cognitive testing we have received and reviewed report that Mrs. Potovsky has a mild cognitive impairment. Therefore, she does not have a severe cognitive impairment that requires substantial supervision.

*Id.*

The SAC alleges that Lincoln violated the terms of the Policy by "refus[ing] to acknowledge Mrs. Potovsky's . . . need for substantial supervision . . . or acknowledge that her condition meets the policy criteria to receive benefits." SAC ¶ 72. The SAC further alleges that Lincoln committed an anticipatory breach of the contract by its "unequivocal denial of Plaintiff's claim for benefits based solely on the Eligibility for Benefit Payment provision of the Policy," relieving them of any further obligation to perform under the contract. *Id.* ¶¶ 82-83. Finally, the SAC reasserts the claims that Lincoln breached the implied duty of good faith and fair dealing and committed elder abuse when it denied the Potovskys' claims. *Id.* ¶¶ 91, 100.

### D.   Procedural History

The Potovskys sued Lincoln in May 2023 and, upon receiving a motion to dismiss, filed the FAC. *See* Dkt. Nos. 1, 15, 17. I granted Lincoln's motion to dismiss the FAC without prejudice and granted leave to amend. *See* Dkt. No. 28. The Potovskys then filed the SAC, and Lincoln again moves to dismiss. *See* Dkt. Nos. 30, 32.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts her allegations as true and draws all reasonable inferences in her favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

### I. BREACH OF CONTRACT

To state a claim for breach of contract, a plaintiff must plausibly allege: (1) the existence of a contract; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4) resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). If the plaintiffs fail to allege facts supporting any of these elements, their breach of contract claim must be dismissed.

The plaintiffs fail to state a claim for breach of contract because they cannot allege performance under the contract or damages stemming from Lincoln's purported breach. The Policy is a reimbursement policy, and the plaintiffs never submitted a claim for reimbursement. They incurred no expenses recoverable under the Policy's terms. The plaintiffs allege that to date, they have satisfied the conditions precedent to receiving benefits under the Policy, or, in the alternative, that their performance was excused, or, that Lincoln waived its right to require they perform. They argue that the damages they suffered were the benefits that would have been payable had their claims been approved. But these allegations fail to state a claim.

6

### A. The Plaintiffs Did Not Perform Under the Terms of the Policy.

To get around their failure to incur expenses or submit claims for reimbursement under the Policy's terms, the plaintiffs argue that Patricia Potovsky "has alleged that she is 'chronically ill' as defined by the Policy and provided ALL information requested by Lincoln." Opposition [Dkt. No. 36] ("Oppo.") 8:25-28. I held in the First MTD Order that this alone was insufficient to allege performance. First MTD Order, 5:13-21. In the SAC, they have added that they have "satisfied all conditions precedent to receiving benefits under the Policy." SAC ¶ 62. They allege that "[i]n September 2022, Mrs. Potovsky met the criteria to receive benefits under the terms of her Policy, and after satisfying the 90-day elimination period [set out by the Policy] Plaintiff was entitled to commence receiving benefits from Lincoln[.]" *Id.* ¶ 60.

There is a threshold issue of whether the Potovskys filed documentation establishing that Patricia had a severe Cognitive Impairment[1] as defined by the Policy—her neurologist diagnosed her first as having an amnestic mild cognitive impairment and then later mild dementia, neither of which Lincoln understood as constituting a severe Cognitive Impairment. *See* SAC ¶¶ 22, 24; *see id.* Ex. G. But even assuming that they plausibly alleged the impairment, they have not alleged that she received Substantial Supervision by someone who is not her spouse or child as is required for coverage under the Policy. *See generally* SAC. Accordingly, they do not allege that Mrs. Potovsky ever received "Substantial Supervision" for her cognitive impairment or that they submitted a Proof of Loss.[2] *See* SAC ¶ 18, 78. As a result, the Potovskys never performed under the contract.

The plaintiffs advance two reasons why they satisfy the performance element despite these flaws, but neither has merit.

---

[1] I capitalize terms in this Order as they were defined in the Policy.

[2] In their Opposition, plaintiffs confirm that Mrs. Potovsky only received the home health services from her husband, who is not an eligible caregiver under the policy terms. Oppo. 9, n. 3. The Policy expressly "does not cover any confinement, treatment or services . . . provided by a member of [the insured's] immediate family." *See* Policy at 9. To satisfy the 90-day elimination period, a claimant must either be confined in a nursing or residential care facility, be receiving home care, or any combination of those before benefits are payable. *See id*. at 3, 6.

### 1. Excuse

"Under California law, if one contracting party prevents the other from performing a condition precedent, the party that is subject to the condition is excused from performing it." *FNBN Rescon I, LLC v. Citrus El Dorado, LLC*, 725 F. App'x 448, 451 (9th Cir. 2018). The plaintiffs argue that their performance was excused because Lincoln made it impossible for them to perform when it did not issue a decision on the viability of their proposed caregivers. *Id.* 9:16-11-2.[3] They did not incur expenses from non-family member caregivers because they wanted to avoid spending money before they knew that Patricia was eligible under the Policy. While this may have been a fiscally prudent choice, it is not one contemplated by the Policy.

The Potovskys rely on *Microsoft Corp. v. Hon Hai Precision Indus. Co.*, for the principle that when one party "thwart[s]" the other's ability to carry out its responsibilities under a contract, the non-thwarting party is relieved of their obligations under that contract. 2019 WL 3859035-LHK (N.D. Cal. Aug. 16, 2019). In *Hon Hai*, Microsoft performed its contractual obligations to Hon Hai; but to be paid, it had to submit an invoice that included information only Hon Hai had. *Hon Hai*, 2019 WL 3859035, at *6. Hon Hai did not complete reports that were necessary for Microsoft to invoice Hon Hai yet it nonetheless sought to avoid its contractual obligation by asserting that Microsoft had never sent the necessary invoice. *Id.* at *6. The Hon. Lucy Koh determined that Hon Hai was obligated to pay Microsoft under the terms of the subject contract, *see id.* at *5, and that Microsoft's failure to send the invoice was excused because Hon Hai thwarted Microsoft's ability to do so by never completing the necessary reports. *Id.* ("Having thwarted Microsoft's ability to carry out its invoicing responsibilities, Hon Hai cannot now complain that Hon Hai never received an invoice."). Judge Koh determined that nothing in the subject agreement in *Hon Hai* suggested that Microsoft's responsibility to invoice Hon Hai

---

[3] For the first time in their Opposition, the plaintiffs also argue that Lincoln failed to affirmatively cooperate with them in performance of the contract. The plaintiffs have not plausibly alleged that Lincoln violated its duty to affirmatively cooperate in their performance under the contract. They argue that Lincoln "frustrated [their] attempts to obtain benefits under the Policy," Oppo. 10:6-7, because it did not approve or deny the proposed caregivers and schedule or advise Ira Potovsky that actual expenses had to be incurred. *Id.* 10:8-12. But, as Lincoln points out in its Reply, Ira Potovsky had indicated to Lincoln that he understood payment of the claim was connected to approval of the caregiver statements, which the plaintiffs only provided to Lincoln on February 3, 2023. *See* SAC Ex. B; Repl. 6:13-20.

8

1  constituted a condition precedent to Microsoft getting paid per the terms of the contract.

2  The key differences between *Hon Hai* and this case are twofold: first, the terms of the contract showed that Microsoft was entitled to royalties from Hon Hai because it had performed; and second, invoicing Hon Hai was not a condition precedent to Hon Hai's obligation to pay Microsoft. *Id.* at *5. Here, the Potovskys have not plausibly alleged that Lincoln thwarted their ability to gather medical information, secure services that would satisfy the conditions for Benefit Payment, or submit a Proof of Loss. The Potovskys disagreed with Lincoln's evaluation of the severity of Patricia's impairment. They did not want to come out of pocket for expensive services. But that is what the Policy required. It was a reimbursement policy. It did not contemplate a two-step process that allowed the Potovskys to challenge the impairment evaluation before submitting the claims for covered services. Incurring expenses was a condition precedent to being reimbursed by Lincoln, and the Potovskys incurred none. The Potovskys were not excused from performance.

### 2. Waiver

The Potovskys also argue that when Lincoln denied their claim solely on the ground that Patricia was not a Chronically Ill Individual, providing no other basis for denial, it waived the right to require actual incurred expenses by the plaintiffs. Oppo. 11:3-9; 12:16-18.[4] They contend

---

[4] Briefly in their Opposition and at oral argument, the plaintiffs argued that Lincoln improperly delayed the claims process seemingly by delaying the approval or disapproval of the plaintiffs' proposed caregivers, which they argue that was a violation of the Fair Claims Practices Act. Cal. Code. Regs., tit. 10, §2695.7. The plaintiffs do not elaborate on this point. They appear to refer to the provision states that "[u]pon receiving proof of claim, every insurer, except as specified in subsection 2695.7(b)(4) below, shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part. The amounts accepted or denied shall be clearly documented in the claim file unless the claim has been denied in its entirety[]", and where an insurer denies a first party claim, it must do so in writing, and "provide to the claimant a statement listing all bases for such rejection or denial." *Id.* § 2695.7(b). The key here is that the statute provides that "upon receiving *proof of claim*" the insurer must accept or deny the claim within 40 calendar days. *Id.* (emphasis added). The Ninth Circuit has held that this provision is only applicable once the insurer has received proof of the subject claim, meaning that the insurer has received evidence of a claim that "reasonably supports the magnitude or the amount of the claimed loss." *See Vizio, Inc. v. Arch Insurance Company*, 2023 WL 7123784, at *2 (9th Cir. Oct. 30, 2023). Where the insured parties have only provided the insurer *notice* of the plaintiff's claim, the timing constraints outlined by § 2695.7(b) are inapplicable. *Id.*

It does not appear that the Independent Caregiver Forms are a "proof of claim" pursuant to the definition laid out by 2695.7, because the plaintiffs would have had to also submit proof of

1   that Lincoln "unequivocally denied [their] claim," and in the face of this unequivocal denial, they

2   "were not required to incur expenses." Oppo. 11:5-9. This argument fails.

3         Waiver is "the intentional relinquishment of a known right after knowledge of the facts."

4   *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 31 (1995) (citations omitted). "The waiver may be

5   either express, based on the words of the waiving party, or implied, based on conduct indicating an

6   intent to relinquish the right." *Id*. Waiver is an affirmative defense, for which the insured bears the

7   burden of proof. *See Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551 (9th Cir. 1991).

8   In the insurance context, "California courts have applied the general rule that waiver requires the

9   insurer to intentionally relinquish its right to deny coverage and that a denial of coverage on one

10  ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive

11  grounds not stated in the denial." *Waller*, 11 Cal. 4th, 31-32 (internal citations omitted). More

12  specifically, "[a]n intention to waive a . . . [provision of a contract] is not evinced by the failure to

13  raise that point in a letter denying a claim." *Id.* (quoting *California Union Ins. Co. v. Poppy Ridge*

14  *Partners*, 224 Cal. App. 3d 897, 902 (1990)). The Ninth Circuit has held that an insurer waives

15  defenses to coverage not asserted in its denial if the insured can show misconduct by the insurer or

16  detrimental reliance by the insured.[5] *See Intel Corp.*, 952 F.2d 1551, 1559.

17        Lincoln's initial denial letter stated that Patricia Potovsky did not meet the criteria for

18  coverage under the Policy. *See* SAC Ex. G. It also contained reservation of rights language:

19              By stating these reasons why the claim is not covered by the policy,
            Lincoln Benefit Life does not waive any other rights or defenses
20              which it may have. This letter is not intended to be a full disclosure

---

incurred expenses to qualify for reimbursement under the terms of the Policy. But even if I were to construe "proof of claim" as being the Independent Care Giver Forms, *see* SAC Ex. C, the record shows that Lincoln only received those forms on February 3, 2023. *See* SAC Ex. D (email fr Lincoln to Ira Potovsky, explaining that while the plaintiffs filed their claim in October 2022, Lincoln only received all the information it needed on February 3, 2023, and therefore needed more time to consider the claim). Lincoln denied the plaintiffs' Long Term Care claim on April 5, 2023, well within the 6-month window prescribed by the Fair Claims Practices Act. The information that Lincoln received prior to February 3, 2023, constituted "notice" of their claim, not "proof" of their claim.

[5] In their Opposition, the plaintiffs cite *Chase v. Blue Cross of Calif.*, for the principle that "[t]he insurer may be found to have waived a policy condition without a showing of detrimental reliance by the insured." 42 Cal. App. 4th 1142, 1151 (1996); Oppo. 12:5-7. They do not discuss detrimental reliance again. The parties do not otherwise discuss detrimental reliance as a necessity for waiver or lack of waiver, and it is not relevant to my analysis.

of all policy coverages, conditions, and exclusions.
SAC Ex. G (Denial Letter) [Dkt. 30] at 58.

Given Lincoln's denial that cited Patricia Potovsky's ineligibility based on her health status as the reason for denial, plaintiffs argue that they were not required to incur expenses "for benefits that should have been approved, but which had . . . effectively been denied." Oppo. 11:5-9. They further contend that Lincoln "led [them] to believe that [it] did not require that actual expenses be incurred prior to its issuing a full and final denial of their claim." *Id.* 11:9-11. For this, they cite the initial denial letter mentioned above.

Lincoln's communication with the plaintiffs about what was necessary to evaluate their claim was not an intentional relinquishment of a known right, nor was it misconduct sufficient to constitute waiver. When the plaintiffs wrote Lincoln in January 2023 that they were not incurring expenses, *see* SAC Ex. B, they were responding to Lincoln's letter in December 2022 that alerted the plaintiffs to the missing Independent Caregiver Service Statements. *See* SAC Ex. A. After the plaintiffs told Lincoln that they did not intend to hire caretakers until they had a decision on Patricia's eligibility under the plan, Lincoln reasonably took them at their word and evaluated just the severity of Patricia's impairment. Failure to warn them about something they explicitly decided not to do is hardly an intentional relinquishment of the right to demand incurred expenses from the plaintiffs once potential eligibility was established, nor was it misconduct.

In *Waller v. Truck Ins. Exch., Inc*, the California Supreme Court reaffirmed what California courts have long held: that failure to raise a reason for denial in the letter denying a claim does not by itself constitute waiver. *See Waller*, 11 Cal. 4th, 31-32 (collecting cases). Considering the incomplete nature of the Potovskys' claim (focusing on the impairment, not reimbursement), the reservation of rights language in the denial letter has particular force. *See e.g. California Dairies, Inc. v. RSUI Indem. Co.*, 2010 WL 2598376, *12 (E.D. Cal. Jun. 25, 2010) (where the court explained that reservation of rights language in an insurance policy did not by itself foreclose waiver, and the whole record had to be examined for evidence of waiver). Lincoln did not explicitly or implicitly waive the Conditions for Benefit Payment or Proof of Loss sections of the Policy.

Finally, the plaintiffs argue that I cannot determine whether Lincoln waived its right to

11

1  demand performance at this stage because the question is too factual, citing *Aviara Residence*
2  *Club Owners Ass'n v. Sec. Nat'l Ins. Co*, 2020 WL 6083446 (S.D. Cal. Jun. 23, 2020). There, the
3  district court denied a motion to dismiss in part because the plaintiff had "alleged facts sufficient
4  to support" its waiver theory among other theories of liability. *Aviara*, 2020 WL 6083446, at *2.
5  But taking what the Potovskys have alleged as true and considering the communications between
6  the parties attached to the SAC, plaintiffs have failed to plausibly plead breach of contract and
7  failed to show how Lincoln could have either explicitly or impliedly waived when plaintiffs failed
8  to perform or submit a claim for reimbursement that Lincoln could approve.

Accepting all facts alleged in the SAC as true and drawing all reasonable inferences in favor of the plaintiffs, their waiver theory cannot prevail.[6]

### B. The Plaintiffs Have Not Pleaded Damages.

Even assuming that the Potovskys plausibly alleged the other elements for breach of contract, they failed to plead damages, which is fatal to their breach of contract claim. As I have discussed above, the Policy was a reimbursement policy and plaintiffs never submitted a claim for which they could be reimbursed.

In my prior order, I noted that the plaintiffs needed to articulate with more specificity what expenses or damages they had incurred as a result of Lincoln's purported breach. First MTD Order 6:7-12. The SAC does not do this. The plaintiffs continue to seek damages in the form of the "benefits that *would have been payable* had Lincoln properly approved [Mrs. Potovsky's] entitlement to incur and be reimbursed for covered expenses in a timely matter," Oppo. 8:20-25 (emphasis added); *see also* SAC ¶¶ 1, 70, 80, 90, or else non-specific allegations of "contractual damages . . . plus . . . other incidental damages and out-of-pocket expenses." SAC ¶ 79.

The SAC confirms that Ira Potovsky, an immediate family member of Patricia Potovsky, was her main caregiver. While Mr. Potovsky's hard work on behalf of his wife was no doubt

---

[6] The plaintiffs also claim in their Opposition that Lincoln has undertaken an "inequitable forfeiture" that "totally undermines the objective of the Policy" by arguing that it is immune from litigation. Oppo. 14:12-15:28; *see also* Mot. 25:7-18. I do not understand Lincoln to assert that it is immune from litigation, only that the Potovskys did not perform in accordance with the Policy and therefore that the Legal Action provision in the Policy should apply.

1  demanding and valuable, it is not recoverable under the Policy. The plaintiffs have been unable to
2  plead actual qualifying expenses.

3  Because the plaintiffs have failed to plead either performance or damages arising from the
4  purported breach, their breach of contract claim is DISMISSED without leave to amend.

**II.   ANTICIPATORY BREACH**

Under California law, an anticipatory breach occurs when one of the parties to a contract repudiates the contract by "express[ly] and unequivocal[ly] refus[ing] to perform." *Taylor v. Johnston*, 15 Cal. 3d 130, 140 (1975). A mere denial of benefits does not constitute a repudiation of the entire contract. *See, e.g.*, *Colony Ins. Co. v. Glenn E. Newcomer Constr.*, 2021 WL 3427012-DMR, at *5 (N.D. Cal. Aug. 5, 2021) (no anticipatory breach where there was a dispute as to coverage, but insured had not alleged that insurer made any "clear, positive and unequivocal statements" that it would refuse to indemnify the insured even if the dispute resolved in the insured's favor).

The plaintiffs allege that Lincoln's "unequivocal denial" of their entitlement to benefits based solely on the eligibility provision of the Policy was an anticipatory breach of the contract that relieved the plaintiffs of their duty to perform under the contract. SAC ¶ 83; Oppo. 16:1-19-12. They contend that Lincoln's "failure to approve or deny Plaintiffs' selected caregivers made further performance under the contract by Plaintiffs' impossible." *Id.* ¶ 85.

This claim is implausible. Lincoln evaluated Patricia's eligibility under the Policy and found that her condition would not qualify. The Potovskys do not agree with that conclusion, but that does not mean that Lincoln repudiated the Policy. Lincoln did not refuse to approve or deny the proposed caregivers for no reason, or in violation of an obligation it had. It did not reach the point of approving or denying the caregivers because it determined that Patricia did not, at the time of either the denial or the appeal, meet the severe Cognitive Impairment standard requiring Substantial Supervision, which is necessary to qualify for the kind of home care she sought.

Lincoln has not made any clear and unequivocal statements that it would refuse to reimburse the plaintiffs if, at some point, Patricia Potovsky meets the benefits criteria laid out in the Policy. Nothing Lincoln has stated suggests that it will not approve her coverage at that point.

1  Moreover, Lincoln has acknowledged that the contract is ongoing, *see* Mot. 19:5, the plaintiffs

2  have paid premiums, SAC ¶ 12, and the plaintiffs may still make a future claim. Repl. 13:20-23.

3  Lincoln has not stated that it will never approve Patricia Potovsky for benefits, and the plaintiffs

4  have not alleged to the contrary.

5  *Colony Ins. Co* is instructive. In that case, the insured party alleged in a counterclaim that

6  an insurance company had "anticipatorily repudiated the contractual provisions" of the parties'

7  insurance contract by making it "unequivocally clear that it has no intention of indemnifying [the

8  insured party]." 2021 WL 3427012, at *5. The insurer had initially declined to provide coverage,

9  but later agreed to extend coverage when certain circumstances were met. *Id.* The Hon. Donna

10 Ryu found that the insured party could not support its anticipatory repudiation counterclaim

11 because it alleged no facts from which the court could infer that the insurance company had made

12 a "clear, positive, and unequivocal statement[]" that it would "refuse to indemnify [the insured

13 party] even if the coverage dispute resolve[d] in [its] favor." *Id.* The plaintiffs cannot allege a

14 clear and unequivocal refusal to perform by Lincoln.[7][8] The anticipatory breach claim is

15 DISMISSED without leave to amend.

### III. BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

17 To state a claim for breach of good faith and fair dealing in the insurance context, a

18 plaintiff must plausibly allege: "(1) benefits due under a policy were improperly withheld, and (2)

19 the withholding was unreasonable or without proper cause." *Henley v. Safeco Ins. Co. of Am.*,

20 2022 WL 2528548-RS, at *3 (N.D. Cal. Jul. 7, 2022) (citing *CalFarm Ins. Co. v. Krusiewicz*, 131

---

[7] Based on the facts alleged, the plaintiffs would not be able to recover damages for anticipatory breach even if they could sustain such a claim. A party cannot recover damages for anticipatory breach unless that party can show that but for the breach he or she was willing, ready, and able to perform as required by the contract. *Ersa Grae Corp. v. Fluor Corp*. 1 C.A.4th 613, 627 (1991). As I have explained above, the plaintiffs have not successfully alleged that they were able to perform under the contract because they have not alleged that they hired nonfamily caregivers for the requisite 90-day period laid out by the Policy.

[8] The plaintiffs also seem to hint at implied repudiation of the contract by Lincoln. "An implied repudiation results from conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible." *Taylor v. Johnston*, 15 Cal. 3d at 137. As discussed throughout this Order, Lincoln did not interfere with the Potovskys' ability to perform their obligations under the Policy.

Cal. App. 4th 273, 286 (2005)). "The test for determining whether an insurer is liable for breach of the implied covenant turns on whether the insurer's alleged refusal or delay was unreasonable." *Nationwide Mut. Ins. Co. v. Ryan*, 36 F. Supp. 3d 930, 941 (N.D. Cal. 2014). "[T]he withholding of benefits due under the policy is not unreasonable if there was a genuine dispute between the insurer and the insured as to coverage or the amount of payment due." *Rappaport-Scott v. Interinsurance Exch. of the Auto. Club*, 146 Cal. App. 4th 831, 837 (2007).

The plaintiffs have expanded their breach of duty of good faith and fair dealing claim considerably since the FAC. They now claim 12 different breaches:

a) Unreasonably withholding benefits from Plaintiff in bad faith at a time when Lincoln knew Plaintiffs were entitled to said benefits under the Policy;
b) Conducting an unreasonable and wholly inadequate investigation by failing to contact Mrs. Potovsky's treating physicians, obtain pertinent medical records, obtain an independent medical evaluation and interview Mrs. Potovsky, among other things;
c) Failing to obtain a medical review from a medical doctor as part of the initial decision and again on appeal;
d) Mischaracterizing Plaintiff's diagnosis as mild cognitive impairment to deny benefits under the Policy;
e) Creating an unreasonable and dilatory claims process designed to discourage insureds from pursuing benefits and certainly not designed around the reality that in most instances, Lincoln would be dealing with elderly people who are more vulnerable and need special attention when addressing concerns with claims and coverage;
f) Failing to respond to Plaintiffs' communications in accordance with the Fair Claims Settlement Practices Act as Lincoln did not answer questions asked by Plaintiffs, nor respond within the time mandated;
g) Failing to obtain any medical review whatsoever of the new medical information submitted on appeal;
h) Cherry-picking information from the medical records and other documents submitted to support Lincoln's desired outcome to deny benefits;
i) Unfairly frustrating Plaintiffs ability to obtain benefits under the Policy;
j) Unreasonably compelling Plaintiffs to institute litigation to recover amounts due under the Policy to further discourage Plaintiffs from pursuing full policy benefits;
k) Unreasonably withholding approval of the caregivers selected by Plaintiffs; and,
l) Lincoln's unfair conduct in litigation was again designed to frustrate and prevent Plaintiffs from pursuing and/or receiving the full Policy benefits that are owing to Plaintiffs.

*See* SAC ¶¶ 91(a)-(l). Each of these claims fails for the same reason: the Potovskys cannot show that benefits under the Policy were improperly withheld. *See Henley v. Safeco Ins. Co. of Am.*, at

1   *3. "A 'first-party bad faith claim' such as this requires an insured to show that he was owed

2   benefits under the contract." *King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 941 (N.D. Cal

3   2015) (citing cases).  The plaintiffs have not shown that they were owed benefits under the

4   contract.

5         And in any event, the SAC fails to allege how Lincoln's conduct was unreasonable or

6   without proper cause.  The SAC does not plausibly assert how Lincoln's taking a little more than

7   two months to evaluate the claim is unreasonable or lacked proper cause; the accompanying

8   exhibits do not support the plaintiffs' claims.  While the plaintiffs allege that Lincoln received

9   Patricia's claim in September 2022 and did not issue a denial letter until April 5, 2023, *see* SAC ¶¶

10  26, 41, the SAC confirms that Lincoln only had all the information it needed to conduct a claim

11  evaluation on February 3, 2023, after the plaintiffs had gone back and forth with Lincoln for

12  several months getting all the necessary information together.  SAC Ex. D (email from claims

13  adjuster Wormell confirming that Lincoln received the necessary forms on February 3, 2023, and

14  they were under review as of February 10, 2023); *id.* Ex. E (email from plaintiffs' son David

15  Potovsky stating "[w]e have continued to follow up with the Lincoln Benefits team, only to be told

16  that the claim was being held up while waiting for additional information or another report . . .

17  Since starting the claims process, we have provided an extensive list of forms and medical

18  records").  The April 5, 2023, denial letter details the information that Lincoln reviewed as part of

19  its decision-making process, and the SAC and accompanying Exhibit H show that Lincoln

20  considered "additional information" during the plaintiffs' appeal.  *See* SAC ¶ 49; *see also id.* Exs.

21  G, H.  These facts, as pleaded, do not support a finding that Lincoln acted unreasonably by waiting

22  approximately two months to issue a decision about the plaintiffs' claims.

23        The SAC also alleges that "Lincoln failed to have the updated medical information

24  submitted on appeal reviewed by any medical professional whatsoever," that it "fail[ed] to obtain

25  any medical review . . . of the new medical information submitted on appeal," and that it

26  "mischaracterize[ed] Plaintiff's diagnosis as mild cognitive impairment to deny benefits under the

27  policy."  SAC ¶ 57, 91.  These allegations are undercut by the exhibits accompanying the

28  complaint.  The initial denial letter shows that Lincoln relied on the attending physician's

statement from neurologist Dr. David Perry. *See* SAC Ex. G. The plaintiffs do not allege why it would have been unreasonable for Lincoln to rely on Dr. Perry's assessment of Patricia's condition. And the appeal letter shows that Lincoln considered Dr. Perry's then-most recent diagnosis of Mrs. Potovsky when denying the plaintiffs' appeal. *See id.* Ex. H. The additional information did not change Lincoln's decision, but that does not mean Lincoln did not consider it. *See id.* The denial letter acknowledged Dr. Perry's "mild dementia" diagnosis and categorized Patricia's condition as a "mild Cognitive Impairment," which Lincoln determined did not rise to the level necessary for coverage under the Policy. *See id.* Ex. G. It is apparent that Lincoln considered Dr. Perry's opinion; this does not show bad faith.

The plaintiffs argued that Lincoln owed a special duty of care to Ira and Patricia Potovsky because they were elderly and more vulnerable. Oppo. 20:19-28. They claim that instead of acting as a "quasi-fiduciary," as they say is required from insurers, Lincoln "adopt[ed] the role of adversary." Oppo. 20:23-25. But the facts as alleged do not support this argument. Lincoln communicated with the plaintiffs about what its Policy required for reimbursement for Patricia's care, *see* SAC Exs. A, D, G, H. It considered her condition in light of examinations done by medical doctors and determined that her condition did not meet the Policy's requirements. *See id.* Exs. G, H.

As for the plaintiffs' allegations about Lincoln's litigation strategy, they are too conclusory to proceed.[9] The plaintiffs' good faith and fair dealing claim is DISMISSED without leave to amend.

## IV. ELDER ABUSE

Under California law, financial abuse of an elder—defined as anyone residing in California aged 65 or older—occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder . . . for a wrongful use or with intent to defraud, or

---

[9] Because the plaintiffs have not plausibly alleged a breach of contract or bad faith by Lincoln, they are also not entitled to seek punitive damages. *See* Oppo. 21:8-21. If no contract benefits are payable because the insured party incurred no expenses, then there is no "malice," "oppression," or "fraud" to justify punitive damages.

both," or assists in doing so. *See* Cal. Welf. & Inst. Code §§ 15610.27, 15160.30(a)(1)-(2). "In the context of a deprivation of property due an elder under an insurance contract, the plaintiff must show more than an incorrect denial of policy benefits." *Henley v. Safeco Ins. Co. of Am.,* 2022 WL 2528548-RS, *3 (N.D. Cal. Jul. 7, 2022) (citation and quotations omitted); *see also Paslay v. State Farm. Gen. Ins. Co.*, 248 Cal. App. 4th 639, 658 (2016) (stating that the statute "imposes a requirement in addition to the mere breach of the contract term relating to the property, as the existence of such a breach ordinarily does not hinge on the state of mind or objective reasonableness of the breaching party's conduct."). The viability of financial elder abuse claims that involve denial of benefits often turns on whether a plaintiff has sufficiently alleged that the defendant acted in bad faith. *See, e.g., Paslay*, 248 Cal. App. 4th at 658-59; *Crawford v. Continental Cas. Ins. Co.*, 2014 WL 10988334, at *2 (C.D. Cal. July 24, 2014).

The SAC alleges that "[g]iven the nature of the insurance Policy and the insurance coverage at issue," Lincoln "knew, or should have known that the failure to pay benefits owed to Plaintiffs was a harmful breach of duty," and "should have been aware of the harm caused to plaintiffs by all of its actions and most importantly by its failure and refusal to pay [Patricia's] long term care benefits." SAC ¶ 101; *see also* Oppo. 22:17-27 (arguing that the plaintiffs' long-term care insurance policy is property and Lincoln deprived them of that property). Obviously enough, this claim is defective because of the Potovskys' failure to allege their entitlement to benefits, as shown in this Order. And there is a further problem. The plaintiffs have not plausibly alleged that Lincoln acted in bad faith or unreasonably. Plaintiffs say that Lincoln's conduct was "unreasonable, wrongful, and in bad faith," but Lincoln's conduct, as pleaded, cannot support the claim of financial elder abuse.

The plaintiffs' financial elder abuse claim is DISMISSED with prejudice.

**CONCLUSION**

The plaintiffs' breach of contract, anticipatory breach, breach of the covenant of good faith, and elder abuse claims are DISMISSED without leave to amend.

**IT IS SO ORDERED.**

Dated: December 6, 2023

William H. Orrick
United States District Judge